UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD REICHENBACH and <br> PAMELA REICHENBACH, <br> <br> Plaintiffs, <br> <br> vs. <br> <br> THE UNITED STATES DEPARTMENT OF <br> AGRICULTURE, *et. al*, <br> <br> Defendants. | Cause No. 1:10-cv-994-WTL-TAB |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Defendants' Motion for Summary Judgment (Dkt. No. 27). The motion is fully briefed, and the Court, being duly advised, now rules as follows.

### I.   STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court accepts as true the admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.    BACKGROUND[1]

Concerned that wetlands in agricultural areas were being lost, Congress enacted the Wetland Conservation Compliance provisions, commonly known as "Swampbuster," under the 1985 Food Security Act. 16 U.S.C. §§ 3801, 3821-24. Swampbuster provisions limit farm program benefit eligibility for farmers who improperly manipulate land, drainage, or ditches affecting the hydrology, vegetative criteria, or hydric soils of an area determined to be a wetland. Plaintiffs Richard and Pamela Reichenbach appeal from a determination that five acres of their farm are wetlands subject to Swampbuster protection.

It is a violation of Swampbuster to produce an agricultural commodity on converted wetland. 16 U.S.C. § 3821. A "wetland" is an area that (1) has a predominance of hydric soils; (2) is inundated or saturated by surface or groundwater at a frequency and duration sufficient to support a prevalence of hydrophytic vegetation typically adapted for life in saturated soil conditions; and (3) under normal circumstances supports a prevalence of such vegetation. 7 C.F.R. § 12.2(a). A "converted wetland" is a wetland that has been "drained, dredged, filled, leveled, or otherwise manipulated (including the removal of woody vegetation) for the purpose of or to have the effect of making possible the production of an agricultural commodity." 7 C.F.R. § 12.2(a).

However, a farmer does not lose his eligibility for program benefits as the result of the production of an agricultural commodity on wetlands that meet the definitions of a "prior converted cropland" or a "commenced conversion." 7 C.F.R. § 12.5(b)(1), (2). A "prior converted cropland" is a converted wetland where (1) the conversion occurred prior to December

---

[1] The Record consists of two appeals, NAD Case No. 2008E000400 and NAD Case No. 2009E000842. Factual citations to the Record contained in NAD Case No. 2008E000400 will be identified as "AR A:[page number]," and citations to the Record contained in NAD Case No. 2009E000842 will be identified as "AR B: [page number]."

23, 1985; (2) an agricultural commodity had been produced at least once before December 23, 1985; and (3) as of December 23, 1985, the converted wetland did not support woody vegetation and met certain hydrologic criteria. 7 C.F.R. § 12.2(a)(8). A "commenced conversion" is a wetland on which conversion began, but was not completed, prior to December 23, 1985. 7 C.F.R. § 12.2(a)(2). A commenced conversion determination allows persons who had actually started conversion of a wetland prior to December 23, 1985, to complete the conversion without jeopardizing USDA program benefits. 7 C.F.R. § 12.5(b). However, to be eligible for the commenced conversion exception, a request for the designation must have been filed with the FSA before September 19, 1988. 7 C.F.R. § 12.5(b)(2)(ii).

### A.    The Procedure

Plaintiffs Richard and Pamela Reichenbach purchased Farm No. 4335, tract 802, located in Hancock County, Indiana (the "Farm"), in 2006. On January 29, 2007, the Reichenbachs requested permission from the Farm Service Agency ("FSA") in Greenfield, Indiana, to remove timber from existing fence rows located on the Farm and additional property they owned.

On March 16, 2007, a scientist from the National Resources Conservation Service (the "NRCS") visited the Farm to inspect the area from which the Reichenbachs planned to remove timber. While on the Farm, he noted that the tract had a potential wetland violation that needed further evaluation.

On June 11, 2007, a preliminary determination was issued, finding that 4.4 acres of the Farm were converted wetlands. This June 2007 preliminary determination was upheld on review by the NRCS State Conservationist on December 17, 2007. The December 2007 decision was deemed the final determination of the agency. The Reichenbachs initiated an appeal of the decision to the National Appeals Division (the "NAD").

During this time, the Reichenbachs wished to operate and work the Farm for the crop year 2008 without farming the area that had been classified as converted wetland, as farming this area would render them ineligible for program benefits. As a result, an employee of the NRCS visited the Farm to place stakes around the wetland on the property and provide the Reichenbachs notice of the specific area they could not farm. During this visit the NRCS employee used a Global Positioning Satellite based on previous NRCS aerial mapping information and measured and staked off 3.5 acres of wetland on the Farm.

After this different measurement, NRCS State Conservationist Jane Hardisty wrote a letter to the Reichenbachs acknowledging the difference between the initial determination of 4.4 acres of wetland and the new 3.5 acre assessment. Hardisty explained that the change in measurements technically resulted in a new determination and the Reichenbachs had not been officially notified by the NRCS of such a new determination. Hardisty acknowledged that "this may have created a situation where it was not clear to [the Reichenbachs] what [they] could farm without violating the wetland provisions." AR A: 12. Accordingly, Hardisty offered to withdraw the adverse determination of 4.4 acres from June 2007 for the purpose of reevaluating the site and the wetland measurements. The Reichenbachs agreed to the withdrawal and reevaluation. The NAD appeal was thus dismissed on July 21, 2008.

Meanwhile, on July 9, 2008, the NRCS team again visited the Farm for the purpose of making a new wetland determination. Mr. Reichenbach, his son, counsel Dan Strahl, and wetland consultant Randy Jones were present for the visit. After viewing the site and reviewing aerial slides, the NRCS scientists confirmed that a converted wetland existed and determined that it was five acres in size.

On March 27, 2009, Hardisty issued a preliminary technical determination that five acres of the Farm constituted a converted wetland with restricted use. This letter informed the Reichenbachs that the preliminary determination would become final within thirty days after receipt of the letter unless the Reichenbachs requested (1) reconsideration of the field visit, (2) mediation, or (3) a waiver of the thirty-day appeal period. The Reichenbachs requested mediation on April 28, 2009, and the mediation process began soon thereafter.

On June 5, 2009, mediator Gail Kappel indicated to Hardisty and the Reichenbachs' attorney, Dan Strahl, that her office would close its file relating to the case because the agency was unwilling to mediate the wetland determination made by the NRCS. Kappel closed her file on June 18, 2009. Accordingly, on June 30, 2009, the Reichenbachs submitted a letter to the Hancock County FSA County Committee requesting an appeal of the March 2009 wetland determination.

The Hancock County FSA Committee held a hearing on Reichenbachs' request on July 21, 2009. Mr. Reichenbach and his counsel were both present. Mr. Reichenbach's counsel presented evidence at the hearing that he argued showed that the March 2009 NRCS wetland determination was incorrect because the area in question had been converted prior to December 23, 1985. At that time, the Committee unanimously determined and informed Mr. Reichenbach that his appeal had merit and the NRCS determination was incorrect as the land had previously been drained and converted.

On August 3, 2009, the Hancock County FSA Committee met in an executive session and based on "further clarification and findings" decided to deny Mr. Reichenbach's request. According to the minutes from that meeting, a letter dated February 22, 1988, was considered by the Committee in making its decision. Neither Mr. Reichenbach nor his attorney were present at

the executive session, nor were they afforded the opportunity to review the additional evidence the Committee considered, including the 1988 letter. On August 11, 2009, the Hancock County FSA Executive Director sent a letter to the Reichenbachs, denying their request for a redetermination of the previous NRCS wetland determination.

The Reichenbachs thereafter appealed the August 2009 decision to the NAD. An in-person hearing was held on October 22, 2009, before Hearing Officer Michael Jacobs. On December 1, 2009, Jacobs issued his determination, which upheld the Hancock County FSA Committee's August 11, 2009, decision to deny the Plaintiffs' appeal of the initial NRCS wetland determination. Officer Jacobs did not mention the Hancock County FSA Committee's course of action.

On January 7, 2010, the Plaintiffs requested an NAD Director Review of the December 2009 NAD Hearing Appeal Determination. On July 9, 2010, M. Terry Johnson, Deputy Director of the NAD, issued the Director Review Determination, which upheld the NAD Hearing Officer's determination. The Reichenbachs now appeal from the Director's determination.

### B. The Relevant Evidence

#### 1. The Site Reevaluation

When the NRCS team visited the Farm in order to make a new wetland determination on July 9, 2008, they were met by Mr. Reichenbach, his son, his counsel Dan Strahl, and wetland consultant Randy Jones. During the site visit, Mr. Reichenbach showed tile that was uncovered with a back hoe at the site. One tile was a plugged clay tile and another one was plastic tile that was installed in 1988.[2] Mr. Reichenbach asked if a different wetland determination was possible

---

[2] In their Statement of Facts, the Reichenbachs state that they "provided documentation of existing tiles on the property that existed prior to 1985" and "also provided information that the entire Farm, including the different areas in question, produced agricultural crops prior to

6

because draining the site was impossible until the County Drainage Board could obtain funding to repair the tile that provides a drainage outlet for the tract of land in question. NRCS Forester/Botanist Kenneth Collins explained to Mr. Reichenbach that a "Commenced Determination" would have been possible by September 1998[3] with approval from the FSA County Committee and that a record of a "Commenced Determination" was not on file.

In his July 16, 2008, report, Collins confirmed that a wetland existed and determined that the converted wetland was five acres in size. He noted that, in making its determination, the NRCS team also reviewed and "geo-referenced" FSA aerial slides of the property from 1981 to 1987. He reported that the 1984 slide was used as a possible wetland boundary, which boundary was the same as that noted on the 1987 slide. He explained that the boundaries of the wetland were determined using a Garmin-handheld Global Positioning Satellite to map the field.

2. *The NAD Appeal*

At the October 22, 2009, NAD hearing before Officer Michael Jacobs, Collins testified about the aerial photographs he used. He admitted that he did not know when the photographs were taken, other than that they were likely taken during the growing season of May to September. He also admitted that he did not know whether any of the photographs had been taken after heavy rainstorms.

The Reichenbachs also submitted a report by Randy Jones of AquaTerra Consulting, Inc. In his report, Jones found the following information, which he indicated had not been considered by the NRCS:

---

1985." Pls.' Br. at 4, ¶¶ 14-15. These assertions are not supported by the cited evidence of record, NRCS Forester/Botanist Kenneth Collins' report from the site visit. AR B:210-11.

[3] The deadline for a commenced conversion application was September 1988. 7 C.F.R. § 12.5(b)(2)(ii). The source of this September 1998 date is unclear.

1. A 1956 aerial photograph showing agricultural production on the subject area;

2. Hancock County Surveyor records indicating the 1900 creation of the Walter S. Alford drain and associated 12 inch tile arm, which provide drainage infrastructure to the site;

3. Clay tile fragments on the surface of the site indicating the presence of a remnant/historic private tiling system in the subject area;

4. The presence of concrete tiles of unknown age (between the original 1900 clay tile and 1987 plastic tiles);

5. The presence of existing historic clay tiles at the site;

6. Hancock County Surveyor records indicating the 1983 maintenance dredging/re-construction of the Walter S. Alford Drain to restore degraded drainage to affected areas, including the subject site; and

7. Hancock County Surveyor records indicating the 1987 replacement/re-construction of the 12 inch tile arm that begins at the subject area.

AR B: 377 Tab 20.6 Ex. P.

On August 6, 2010, the Reichenbachs filed in the instant action contesting the NAD Director's determination. The Defendants have moved for summary judgment.

### III. DISCUSSION

Under the Administrative Procedures Act (the "APA"), a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Accordingly, in determining whether an agency action is arbitrary or capricious, the court considers "whether the

decision was based on a consideration of the relevant factors and whether there has been clear error of judgment." *Id.*; *see also F.C.C. v. Fox Tel. Stations, Inc.*, 556 U.S. 502, 513 (2009).

### A.     The Procedure

The Reichenbachs contend that the USDA acted arbitrarily, capriciously, or otherwise unlawfully when it upheld the determination of the Hancock County FSA Committee. It was improper for the NAD Hearing Officer and the Director to uphold the Committee's determination from a meeting at which neither Mr. Reichenbach nor his counsel were present, the Reichenbachs argue, and this impropriety harmed them insofar as the determination was therefore not sent back for reevaluation to the NRCS, but rather had to be appealed to the NAD.[4]

The Reichenbachs assert that the original determination and subsequent agency review procedures were "not in accordance with the required appeal procedures under the C.F.R." Pls.' Br. at 13. However, the Reichenbachs do not point to any specific regulation that has not been followed. Rather, at its core, the Reichenbachs' claim is that the Hancock County FSA Committee's subsequent meeting violated their procedural due process rights. According to the Reichenbachs, it follows that subsequent agency determinations upholding a decision reached in violation of the Reichenbachs' due process rights are in error.

In determining whether a due process violation has occurred, the court engages in a two-part analysis. *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). First, the court considers whether the plaintiffs have been deprived of a liberty or property interest. *Id.* Second, the court determines what process is due. *Id.* The Plaintiffs do not clarify the nature of their interest, but

---

[4] If a County FSA Committee hears an appeal and believes the challenge to the NRCS determination is not frivolous, the County FSA Committee must refer the case with its findings on other issues to the NRCS State Conservationist to review the determination, or make such a referral in advance of resolving other issues. 7 C.F.R. § 780.11(b). A decision of the County Committee not to refer the case with its findings to the NRCS State Conservationist may be appealed to the State Committee. 7 C.F.R. § 780.11(c).

9

the Defendants do not challenge them on that point. In fact, the Defendants do not even appear to challenge the Plaintiffs' implicit assertion that they were entitled to be present at the second County Committee hearing. Rather, the Defendants urge, the Plaintiffs cannot show prejudice, and therefore their claim fails. *See Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004) ("To prevail on a due process claim an applicant must show prejudice.").

"Prejudice can be found only when the due process transgression is likely to impact the results of the proceedings." *Id.* at 1087-88 (citation and quotation marks omitted). In other words, the Reichenbachs must put forth sufficient evidence to support a finding that, had they been able to participate in the second hearing, as well as review the new evidence considered by the Committee, their participation and review were likely to have had an impact on the result of that second hearing. The Reichenbachs have pointed to no such evidence. Accordingly, they have pointed to no evidence that the subsequent decisions by the NAD Hearing Officer and the Director upholding the County Committee decision were arbitrary, capricious, or otherwise not in accordance with the law.[5] The Defendants are therefore entitled to summary judgment on this claim.

## B. The Evidence

The underlying determination that the area in question does not qualify as prior-converted cropland turns on whether the area supported woody vegetation and met certain hydrologic

---

[5] Indeed, the Director acknowledged as much in his review determination: "Regarding Appellants' contention that they did not have access to one of the documents the [County Committee] relied on, i.e., the February 22, 1988 letter, until the NAD hearing, I do not find that document was critical to the [Committee's] decision. . . . I do not find any violation of the Appellants' due process rights occurred." AR B: 111.

criteria as of December 23, 1985. 7 C.F.R. § 12.12(a)(8).[6] According to the Reichenbachs, the methodology used by the NRCS to determine both the ability to support woody vegetation and the size of the wetland area is arbitrary, capricious, and otherwise not in accordance with the law.

NRCS Forester/Botanist Collins explained the methodology used in his July 16, 2008, report:

> After reviewing the Farm Service Agency (FSA) 1981-1987 slides that were scanned and geo referenced for a GIS program we determined that the site was converted in 1988. Before conversion the site was approximately 50% shallow water with shrubby woody vegetation. The site meets wetland criteria using the approved 1994 SCS mapping conventions as documented on the Remote Sensing Data Form. The 1984 image was selected for a possible wetland boundary because it gives us the site condition applicable to the December 23, 1985 date in accordance with the NFSAM. The 1984 boundary is also the same as noted on the 1987 slide before the wetland was converted in 1988. To mark the proposed wetland boundary the data points from the GIS program were loaded into a Garmin handheld GPS unit.

AR B: 210. The Reichenbachs contend that Collins erred when he relied on a single slide from 1984 to determine that woody vegetation was present on the site as of December 23, 1985, because he admitted that he was not sure when in 1984 the photo was taken. Pls.' Br. at 17 ("The only evidence the NRCS scientist ever produced to the contrary was a review of one aerial photograph taken in 1984"). If that were true, the Reichenbachs may have cause to complain.[7]

---

[6] The Director acknowledged the Reichenbachs' evidence as to the other two requirements. AR B: 73.

[7] The Reichenbachs also fault Collins' analysis of a "single slide" because he admitted that he did not know whether the photo was taken after a heavy rain. Given Collins' testimony at the NAD hearing, this argument is perplexing. It does not appear that the presence of standing water on the property could skew the assessment of existing woody vegetation, for Collins testified that he identified woody vegetation based on its textural appearance in the aerial photographs. The Court supposes that the existence of standing water from a heavy rain could affect the determination of the inundation level of the soil, but that is not the factor on which the USDA's determination turns, nor is it the factor on which the Reichenbachs focus their argument. *See* 7 C.F.R. § 12.2(a)(2) (defining the elements of a wetland, including an area "that is inundated or saturated by surface or groundwater at a frequency and duration sufficient to

However, the record indicates that Collins did not review merely a single slide in making his determination that the area supported woody vegetation; rather, he reviewed slides from 1981 through 1987.[8] While review of one slide of an unknown date and weather condition may be the "very definition" of an arbitrary practice, Pls.' Br. at 16, review of slides spanning seven years is not. Collins' analysis articulates a consideration of the relevant factors and demonstrates a rational connection between the facts found and the choice made. As the methodology was sound and properly applied, no clear error occurred.[9]

The Reichenbachs also argue that the method used to determine the size of the wetland was arbitrary and capricious. As the Defendants admit, the methodology used to determine the boundaries of the area supporting woody vegetation yielded three different conclusions about the size of the converted wetland.[10] However, the Reichenbachs' complaint as to the accuracy of this method suffers from a fundamental problem: it was not presented to the NAD or the USDA for

---

support a prevalence of hydrophytic vegetation typically adapted for life in saturated soil conditions").

[8] Elsewhere, the Reichenbachs admit as much: "Mr. Collins based this determination [that the site was 50% shallow water with shrubby woody vegetation] by looking at the aerial photographs from 1981-1987." Pls.' Br. at 6, ¶ 26. Furthermore, the Reichenbachs' expert report supports Collins' assessment. AR B: 377.34 ("Subsequent aerial photographs, starting in 1972, show . . . reversion to wetland conditions at the subject site . . . . Hancock County Surveyor records indicate the Alford Legal Court Drain was bid for maintenance dredging/re-construction in January of 1983 in an effort to remove accumulated sediment and to restore drainage . . . . [F]unds became available in 1987").

[9] The Reichenbachs also argue that "No woody vegetation existed on the property during the NRCS site visit," Pls.' Br. at 19, but the operative date for determining the support of woody vegetation is December 23, 1985. It is irrelevant to the determination whether woody vegetation existed in July 2008. *See Horn Farms, Inc. v. Johanns*, 397 F.3d 472, 477-78 (7th Cir. 2005) ("[T]he timing question is whether the converted ground was a wetland on December 23, 1985.").

[10] With respect to the wetland boundary, Collins' report indicates that he did rely on the controversial 1984 slide, but the report also indicates that Collins cross-checked the 1984 slide boundary with the 1987 slide boundary.

review as required.[11] 7 U.S.C. § 6912(e) ("[A] person shall exhaust all administrative appeal procedures . . . before the person may bring an action in a court of competent jurisdiction"); *see Glisson v. United States Forest Serv.*, 55 F.3d 1325, 1328 ("agency action is reviewable even if an administrative appeal is available unless either a statute or the agency's rules require exhaustion as a prerequisite to judicial review") (citing *Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (interpreting section 10(c) of the APA)). For this reason, the Defendants are entitled to summary judgment on the Reichenbachs' claim regarding the process used to determine the size of the wetland at issue.[12]

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is **GRANTED** in its entirety.

SO ORDERED: 1/04/13

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[11] Before the NAD and USDA, the Reichenbachs made three arguments: (1) the Hancock County FSA Committee decision was arbitrary, capricious, and an contrary to law; (2) the NRCS's report is arbitrary and capricious because it does not "prove" that the area contains hydric soil, wetland hydrology, and hydrophytic vegetation; and (3) the site is eligible for a "Commenced Conversion" determination since the governmental agency in charge of drainage for the site was in the process of improving the drainage on the site before December 23, 1985. AR B: 54-57; 312-15.

[12] Indeed, it appears that the Reichenbachs raised the size issue for the first time in their summary judgment response brief.